EDMUND T. H. GIBSON et al., Appellants and Respondents, *v.* THE NATIONAL PARK BANK OF NEW YORK et al., Appellants and Respondents.

The certification of a check drawn upon a bank by the owner of a fund on deposit therein does not, while the check is outstanding in the hands of the drawer, exempt the fund from the lien of an attachment against him, levied thereon.

The liability of the bank for failure to hold the fund subject to the lien can be defeated only, by showing either a payment of the check in good faith to a *bona fide* holder, or that it was outstanding in the hands of such a holder.

Where a debt has been legally attached, in an action against the creditor an active duty is imposed upon the debtor, and he is liable, when by inaction he allows the attached fund to be removed from his possession.

When, however, a negotiable security, representing the amount of a debt, has been delivered by a debtor to his creditor, it is essential to a recovery of such debt by an attaching creditor, that he obtain possession and return the security to its maker, on or before trial, or show that it was paid in bad faith and is then in the possession of the maker.

A bank is chargeable with knowledge or notice of a fact legitimately communicated to any of its officers while acting in his capacity as its agent, and knowledge so communicated, which imposes a duty on the bank, becomes the knowledge of all of its other agents when acting officially.

In an action against a bank to recover the amount of an alleged deposit made by a corporation, upon which plaintiff claimed a lien under or by virtue of an attachment against the depositor, it appeared that the corporation had a balance on deposit with defendant, which deposits had been made by R., as assistant treasurer of the corporation. Three days prior to the levy of the attachment defendant, at the request of R., certified a check for such balance, drawn by him as assistant treasurer, and payable to his order as such, and charged the same to the corporation. At the time of the levy of the attachment the check was in the possession of R., and was owned by the corporation. After the levy, R., upon being informed thereof, requested and was granted permission to open an account in his own name; he thereupon produced, and had deposited to his individual credit, the certified check and two other checks or drafts made payable to his order as assistant treasurer, which deposit was subsequently exhausted by R., in paying the debts of the corporation. Before the certification of the check, defendant had knowledge that the corporation was pecuniarily embarrassed, and that a prior attachment had been levied upon its deposits. Defendant had also been a party to a scheme by which it had kept the funds of the corporation so as not to be liable to attach-

ment, and knew that other attachments were anticipated, and that it was the intention of the corporation to impede its creditors in reaching their deposits. *Held*, the evidence justified a finding that defendant, when such deposit was made by R., had reason to and did believe the deposits belonged to the corporation, and were made in R.'s name to avoid expected attachments; that the fact the securities were made payable to R., in his official capacity, was notice to every one into whose hands they came that they were the property of the corporation, and that R. held them in a fiduciary capacity ; that it was defendant's duty on service of the attachment to take immediate steps to impound the funds in its hands, and for neglect of this duty it was liable; that it could not shield itself by alleging ignorance of its agent, who made the payments; but *held* that no lien was acquired by virtue of the attachment beyond the amount on deposit when it was served, which was covered by the certified check; that the deposit of the other securities created no debt from the bank to the attachment debtor, and although such deposit was made in R.'s name, for the express purpose of defeating creditors of the corporation, the legal title to the debt was in R., and any equitable right existing in favor of creditors could be enforced only through an action in equity.

In making the levy under the attachment the required certificate was served upon defendant by the deputy sheriff; it purported to be signed both by the sheriff and the deputy ; the names were in fact signed by a clerk to the deputy, by his direction. *Held*, that he having adopted the act of his clerk, in signing the process, it was to all intents and purposes the act of the deputy ; that as it was merely mechanical and ministerial, its performance could lawfully be delegated; and that the certificate was sufficient.

*It seems* that when an order has been made in an action substituting another as plaintiff on the ground of the death of the original plaintiff, it is not requisite to prove upon the trial the death or the right of the person substituted ; these facts are necessarily determined in making the order.

(Argued December 16, 1884 ; decided January 20, 1885.)

THESE are cross-appeals from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made the first Monday of November, 1883, which affirmed a judgment in favor of plaintiffs, entered upon the report of a referee. (Reported below, 17 J. & S. 429.)

The case is reported on a former appeal, *sub nom. Bills* v. *The National Park Bank* (89 N. Y. 343).

This action was brought to recover the amount of an alleged

indebtedness of defendant, The National Park Bank, to the New Orleans, St. Louis and Chicago Railroad Company, upon a deposit account, which indebtedness plaintiffs claimed to have attached under and by virtue of a warrant of attachment issued in an action brought by Bills, one of the original plaintiffs.

It appeared that on April 27, 1875, the bank, defendant, owed the railroad company a balance of about $6,600, upon its deposit account. On that day, at the request of one Rodney, who was the assistant treasurer of said company, and who was its financial agent in New York, and who made the deposits for it, the bank certified a check of the company, signed by Rodney, as assistant treasurer, and made payable to his order, for the amount of the balance. The attachment was levied on April 30, 1875. On the same day, after such levy, Rodney, upon being advised thereof, asked permission, which was granted, to open a deposit account in his own name. He thereupon deposited said check, with other checks or drafts belonging to the railroad company, which were made payable to his order as assistant treasurer, and were indorsed by him as such, which were credited to him in his individual account. The amount of such deposit was subsequently paid out by the bank on checks drawn by Rodney, to pay debts of the railroad company.

The further material facts are stated in the opinion.

*George H. Adams* for plaintiffs. If goods come to garnishee after attachment served and before garnishee has pleaded to the warrant, the attachment so served shall bind the goods. (1 Com. Dig., Attach. C. P. 541; Appendix to Sarg. on Attach. 205; *McDaniel* v. *Hughes*, 3 East, 874; *McGrath* v. *Hardy*, 4 Bing. N. C. 785; *Getchel* v. *Chase*, 17 N. H. 106; *Slints* v. *Habensack*, 20 Penn. St. 412.) By virtue of the attachment itself, no property is taken from the citizen, much less from the garnishee, but it is the execution issued upon the judgment to be obtained in the attachment suit which by being levied upon the attached property

constitutes the real and final taking of the property from its owner. (*Lynch* v. *Livingston*, 6 N. Y. 422; *Martin* v. *Bush*, 10 Johns. 223; *Randall* v. *Davis*, 18 id. 7; *Tillotson* v. *Cheatham*, 2 id. 62; *Levitt* v. *Tarrar*, Cro. Eliz. 2947; Smith on Sheriffs and Coroners, 20.) The under-sheriff was properly substituted. (2 R. S. 439; 2 Edm. 457, § 69, 1, 5; Code of Civ. Pro., §§ 184, 186, 644, 706; *Union Dime Inst.* v. *Andariese*, 19 Hun, 310; *Boardman* v. *Halliday*, 10 Paige, 223; 1 R. S. [Edm. ed.] 352, § 72; 1 R. S. 379, § 72; Code of Civ. Pro., § 189; 2 R. S. 388, § 14; Code of Civ. Pro., § 766; *Orser* v. *Glenville W. Co.*, 13 Abb. [N. S.] 85; *Mason* v. *Suydam*, 2 Johns. Ch. 173; *Newman* v. *Beckwith*, 61 N. Y. 205.)

*Francis C. Barlow* for defendant National Park Bank. When the defendants secured the check and credited Rodney with it, they became the owners of it for value, and Rodney became simply a creditor of the bank. (*Commercial Bk.* v. *Hughes*, 17 Wend. 94; *Bank* v. *Bank*, 46 N. Y. 87.) Nothing but fraud or bad faith can impeach the title of one who has taken negotiable paper for value and before maturity. (*Hotchkiss* v. *Banks*, 21 Wall. 359; *Magee* v. *Badger*, 34 N. Y. 249; *Lord* v. *Williamson*, 21 Barb. 593; *Ins. Co.* v. *Hatchfield*, 73 N. Y. 228; *Bank* v. *Noxon*, 45 id. 762; *Welch* v. *Sage*, 47 id. 143; *Farrell* v. *Lovett*, 68 Me. 326; *Murray* v. *Lardner*, 2 Wall. 110; 2 Pars. on Notes and Bills [2d ed.], 269.) The court takes judicial notice of the usages of business. (*Agawam Bk.* v. *Stever*, 18 N. Y. 512; *Bank* v. *Hall*, 83 id. 345.) The plaintiffs have the burden of proof. (*Castrigue* v. *Barnabo*, 6 Ad. & El. [N. S.] 500.) Testimony which is equally consistent with two things proves neither. (*Ellis* v. *R. R. Co.*, L. R., 9 C. P. 557; *Priest* v. *Nichols*, 115 Mass. 401.) If negotiable paper could have been valid under any circumstances, or if the title of one offering to pass it could have been good under any circumstances, one who takes it has a right to assume that those circumstances existed. (*City* v. *Butler*, 14 Wall. 296; *Bank* v. *Bank*, 10 id. 644; *Barnes* v. *Bank*, 19 N. Y.

164; *Safford* v. *Wyckoff,* 4 Hill, 445; *Bissell* v. *R. R. Co.,* 22 N. Y. 290; 1 Pars. on Notes and Bills [2d ed.], 165; *Duncomb* v. *R. R. Co.,* 84 N. Y. 190.) This is a case where the property of a citizen is sought to be taken from him by process *in invitum,* and in such cases the statute is required to be pursued with the utmost strictness. (Blackwell on Tax Titles [4th ed.], 37, 51, 52, 63, 64; *Cruger* v. *Dougherty,* 43 N. Y. 107; *Curtiss* v. *Leavitt,* 15 id. 250; *Sharp* v. *Speir,* 4 Hill, 76; *Spear* v. *Ditty,* 9 Vt. 283.) Where the signature of a public officer is required, he must make it himself, no delegation is possible. (*Chapman* v. *Inhabitants,* 56 Me. 390, 393; 68 id. 587; Blackwell on Tax Titles [4th ed.], 380; *Spear* v. *Ditty,* 9 Vt. 282; *Hannel* v. *Smith,* 15 Ohio, 134.) The courts require a strict compliance with such statutes whether they consider them reasonable or not. (15 N. Y. 250; 1 Vt. 364.) An attachment only binds money or property in the hands of a third person (here the bank) at the time of its levy. (Old Code, §§ 227–331 *et seq.;* *O'Brien* v. *Ins. Co.,* 56 N. Y. 52.) Whatever the rule may be in what is known as "garnishment" or "trustee process," there is no analogy between the plea or answer in such proceedings, and the certificate provided for by section 236 of the Old Code. *O'Brien* v. *Ins. Co.,* 56 N. Y. 60.) The bank, having become the holder and owner of the check for value, was protected. (*Magee* v. *Badger,* 34 N. Y. 249; *Hotchkiss* v. *Bank,* 21 Wall. 354.) There can be no interpleader unless the two claimants are in privity with each other, and not where one claims by a hostile and superior title. (*Lund* v. *Seaman's Savings Bk.,* 23 How. Pr. 258.) Interpleader is allowed only where two persons have preferred a claim for the same debt or thing. (*Dorn* v. *Fox,* 61 N. Y. 268; *Atkinson* v. *Marks,* 1 Cow. 703.)

RUGER, Ch. J. Upon a former appeal to this court, the principal questions involved in this case were determined in favor of the respondents. (*Bills* v. *Nat. Park Bank,* 89 N. Y. 343.) It was there held:

*First.* That a certified check on a bank by the owner of a

fund therein deposited, and outstanding in the hands of the drawer, constituted no such change in the ownership of the fund as exempted it from the lien of an attachment against the owner levied thereon.

*Second.* That the bank could defeat a liability to hold such deposit subject to the lien of the attachment, only by showing a payment of the check made in good faith to a *bona fide* holder, or that it was outstanding unpaid in the hands of such a holder.

*Third.* When a negotiable security representing the amount of a debt has been delivered by a debtor to his creditor, it is essential to a recovery by the attaching creditor of such debt that he obtains possession and returns the security to its maker on or before the trial, or show that it has been paid in violation of good faith and is then in the possession of such maker.

The questions there arose upon an appeal by the plaintiffs from a judgment rendered against them in the courts below, and was determined upon findings of fact which we thought entitled the plaintiffs to recover; we see no reason now to revise any of the conclusions then arrived at. The findings then showed that soon after the attachment had been served upon the bank, one Rodney, who was the assistant treasurer of the attachment debtor, appeared at the bank and opened an account in his individual name, by depositing to his own credit certain securities belonging to the attachment debtor, and amounting in the aggregate to some $55,000, among which was the certified check in question. That at the time the deposit was so made by Rodney, the bank had good reason to believe, and did believe, that the securities so deposited by him were the property of the railroad company, and that he intended to apply the credit which he obtained by the making of the deposit to pay lawful and just debts owing by the company, and that in fact he did so apply the same.

Upon a retrial of the case upon substantially the same evidence, another referee has made a similar finding with the addition that the defendant " believed that the transaction took the shape it did to avoid expected attachments."

The defendant now contends that this finding is unsupported by any evidence, and seeks to review it upon an exception taken thereto.

To sustain this exception, it is incumbent upon the defendant to show that there was no evidence to support the finding, or that the evidence preponderated so strongly against it, that it presented substantially no dispute upon the fact. We do not think this has been made out. The evidence tended to show that the bank had notice previous to January, 1875, of the pecuniary embarrassment of the attachment debtor, the New Orleans, St. Louis and Chicago Railroad Company, and not only that it had been once discommoded by an attachment levied upon its current funds in the hands of the defendant, but anticipated other attachments at the suit of unpaid creditors upon the funds it should accumulate from time to time in New York.

The defendant had already become a party to a scheme by which these funds were kept by the bank, so as not to be liable to attachment at the suit of creditors, and knew that it was the intention of the railroad company, to impede its creditors in reaching them.

Three days prior to the time when the May coupons of said road were payable in New York, the bank at the request of Rodney, the assistant treasurer, certified a check drawn by him as such assistant treasurer, payable to his order as such assistant treasurer, and thereby allowed him apparently to take into possession of the railroad company, the entire balance of its funds remaining in the bank. Before this check was paid by the bank, or had arrived in the possession of a *bona fide* holder, the attachment in question was properly served, not only upon the railroad company, but also upon the defendant bank. Subsequent to this time, but on the same day, Rodney, was informed by the defendant's officers of the service of the attachment, and thereupon requested permission to open an account with the bank in his individual name. This was granted to him, and he thereupon produced the check in question, and two other drafts or checks amounting in the aggregate to $55,-

000, all payable to the order of the said assistant treasurer, and caused them to be deposited to his individual credit in the books of the bank. This deposit was subsequently exhausted by Rodney in paying the debts of the railroad company.

We think this evidence is sufficient to support the findings of the referee that the bank had reason to and did believe, when the deposit was made, that the funds composing it were the property of the railroad corporation. That they were in fact its funds is not even now questioned, but it is claimed that the bank had then no sufficient reason to believe that they were. It is difficult to see what other inference any of the officers or employes of this bank had authority to draw from the undisputed facts.

Rodney was the treasurer of the railroad company, and the drafts and checks presented were payable to him in his official capacity alone. He produced those papers to the officers of the bank, and in their presence, as the officer of the railroad company, assumed to transfer them to his own use. The fact that these securities were payable to Rodney, as assistant treasurer of the railroad company, was notice to everybody into whose hands they might come that the funds represented by them were the property of the railroad company, and that Rodney held them in a fiduciary capacity. (*Fellows* v. *Longyor*, 91 N. Y. 324; *Shaw* v. *Spencer*, 100 Mass. 382, 389; *Jackson* v. *Campbell*, 5 Wend. 572; *Houghton* v. *McAuliffe*, 26 How. Pr. 270.) The possession by Rodney was, therefore, the possession of the attachment debtor, and was notice to every one who knew his official employment and the character in which he received the securities that the railroad company was their owner. The general presumption of ownership arising from the possession of negotiable paper is controlled by the positive evidence of the fiduciary character of such possession. (See cases above cited.)

It must be assumed in considering this evidence that knowledge or notice of a fact legitimately communicated to any of its officers while acting in his capacity as an agent of the bank becomes the knowledge of the bank, and that knowledge or

notice communicated to the principal, which imposes a duty upon it, becomes by that circumstance the knowledge of all of its agents when acting in an official capacity. ( *Village of Port Jervis* v. *Bank of Port Jervis,* 96 N. Y. 550 ; *Bank of U. S.* v. *Davis,* 2 Hill, 451.)

The debtor of a defaulting creditor, whose liability is sought to be attached in an action against such creditor, has an active duty to perform, imposed upon him by the legal attachment of such debt, and cannot escape liability when, by inaction, he allows the attached fund to be removed from his possession.

When the officers of this bank had notice of the service of the attachment, it was their duty to take immediate steps to impound the funds in their hands, and prevent their payment by any of its agents, except to a *bona fide* holder of its obligations. It cannot shield itself from liability by alleging the ignorance of the agent making the payment, while other agents having authority and owing a duty to act in the premises had knowledge of the facts, which made such payment a violation of duty on the part of the corporation. The circumstances certainly raised a presumption of knowledge in the bank which required explanation on their behalf. It was, therefore, quite significant that no officer of the bank was produced to testify his ignorance of the fact, that these securities belonged to the railroad company, or that the bank supposed it was paying them in good faith to a *bona fide* holder when they gave Rodney an individual credit for them.

The facts relating to the point in dispute being peculiarly within the knowledge of the defendant, the presumption arising from their omission to furnish such evidence goes strongly to support the finding of the referee. That the defendant had notice of the purpose for which this deposit was transferred was properly found by the referee as a natural inference from the knowledge which it had of the embarrassment of the railroad company, their acknowledged desire to avoid the service of an attachment upon their funds and the previous efforts of the creditors to reach them by legal process.

The defendant errs in seeking to apply the rules which de-

termine the respective rights of parties in negotiable paper to this transaction. The plaintiffs in this case claim no right through the check in question. Their claim arises from an alleged lien upon a fund in the hands of the bank belonging to their attachment debtor, and the consideration of the check is important here only upon the question as to whether such fund has been paid out in good faith.

We think the evidence tends to show that it was not, and that the exception to the finding in question was not well taken.

It is also urged that the plaintiffs showed no legal service of the attachment upon the defendant inasmuch as the certificate served by the sheriff was not personally signed by him or his deputy. The certificate upon its face purports to be signed both by the sheriff and his deputy. It appears that such names were in fact signed by one Sweeney, a clerk to the deputy who served the process, acting by the directions of such deputy ; and it further appears that the deputy took the process thus prepared and personally served it upon the defendant. Having adopted the act of his clerk in signing the process it was to all intents and purposes his act, and he would be thereafter estopped from controverting the validity of the signature. In the performance of this act no element of judgment or discretion was to be exercised, and it was, therefore, merely mechanical and ministerial and its performance could be lawfully delegated to another. (*Powell* v. *Tuttle*, 3 N. Y. 396 ; *Lynch* v. *Livingston*, 6 id. 422.) The authority of the deputy sheriff to perform all necessary ministerial acts required in the service and execution of legal process addressed to the sheriff is unquestionable. (2 R. S. 966 [7th ed.] ; *Livingston* v. *Cheetham*, 2 Johns. 479 ; *Randall* v. *Davis*, 18 id. 7.) The certificate required by the statute is obviously that of the officer whose duty it is to execute process in the mode pointed out by the Code. He had by necessary implication the power to do whatever was necessary to perform the duty enjoined upon him by the law.

The objection is also now taken by the defendant to this re-

covery that the proof shows no right on the part of Cummings, one of the plaintiffs, to recover. This point is based upon the allegation that there is no evidence showing that sheriff Conners was dead, or that Cummings was Conners' under-sheriff at the time the supplemental complaint was served. This objection was not taken at the trial and we think comes too late. No motion for a nonsuit or to dismiss the complaint was made by the defendant when the plaintiff rested, or when the evidence was finally closed upon the ground now suggested. It was an objection which, if properly taken at any time during the progress of the trial, could easily have been obviated. The defendant had no right to lay by until the opportunity to explain had passed and then seek to take advantage of technical defects in the proof. A further answer to the point appears in the order of the court authorizing the substitution of Cummings as plaintiff in the action in the place of Conners. It was thereby adjudicated, not only that the sheriff was dead, but also that Cummings was his under-sheriff. Within the authority of *Smith* v. *Zalinski* (94 N. Y. 519), this obviated the necessity of the proof of those facts on the trial.

This disposes of the material objections raised by the defendant to the recovery in this case.

The plaintiffs, however, have taken an appeal upon the ground, that the referee erred in holding that they were not entitled to recover for the moneys deposited by Rodney with the defendant on the day the attachment was served. It is claimed by the plaintiff, that the service of the attachment gave them a lien upon the moneys so deposited, if they were, in fact, the moneys of the attachment debtor, although they were deposited in the individual name of Rodney, its assistant treasurer. This claim cannot be maintained. The deposit in question created no debt from the bank to the attachment debtor, which it could enforce against the bank. By the voluntary consent of the owners of the fund deposited, the credit in question was given to Rodney, and the bank thereby became liable to pay the amount to him, and to him alone. It

was competent for the parties to give such form to the transaction as they desired, subject only to the right of creditors in a proper action to impeach the validity of the transaction. Assuming that the deposit was made in this form for the express purpose of defeating the creditors of the railroad company, the legal title to the debt was nevertheless in Rodney, and any equitable right existing in favor of the creditors against the railroad company could be enforced only through an action in equity, to which Rodney and the railroad company would be necessary parties. No right of action, either legal or equitable, accrued to the railroad company from the transaction, nor did any right of property to such funds remain in them thereafter. Title passes even by a fraudulent conveyance if executed. (*Mosley* v. *Mosley*, 15 N. Y. 334.)

It necessarily follows that there was no property of the attachment debtor in the hands of the defendant, subject to be taken on attachment by its creditors, either before or after the service of the attachment in question, except the liability existing prior to April, 1875. (*Anthony* v. *Wood*, 96 N. Y. 180.)

The conclusion reached on this point renders it unnecessary to consider other difficulties in the way of the plaintiffs' claim.

The judgment should be affirmed, without costs to either party.

All concur, except RAPALLO, J., not voting.

Judgment affirmed.