THOR WARNER *vs.* WALTER E. BROWN & others.

Suffolk.   October 14, 1918. — November 27, 1918.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Agency,* Scope of authority, Construction of power of attorney, Reliance on authority in writing. *Evidence,* Extrinsic affecting writings. *Equity Pleading and Practice,* Incompetent evidence not affecting result.

In determining the character and extent of the authority given by a power of attorney, it is permissible to examine all the circumstances under which the instrument was executed, so far as those circumstances were actually or presumably present in the minds of the parties, for the purpose of enabling the court to understand the situation of the parties and to apply their words to the right subject matter in the light of all the attendant conditions, and for this purpose oral evidence is admissible.

In a suit in equity to enforce an alleged right of the plaintiff to have made to him a transfer of certain shares of mining stock, the defendants relied on a transfer of the beneficial interest in the shares purporting to be made by a business associate of the plaintiff under the authority contained in a power of attorney executed by the plaintiff. The shares alleged to have been transferred under

the power were of the capital stock of a mining company incorporated under the laws of the State of Maine and having a place of business in Boston, which was organized for the purchase and operation of mines and mining interests in the State of Nevada. The mining company was in financial difficulties. The plaintiff's associate, made attorney, had begun an action against the mining company in his own name, of which the plaintiff knew, and was at the time of the execution of the power of attorney in conference with the attorney of the mining company about the settlement of his claims and those of the plaintiff. Neither the plaintiff nor his associate to whom the power of attorney was made held any shares of the mining company in his own name but each of them was the beneficial owner of shares of the stock held by a trustee under a pooling agreement. The plaintiff had no property in the State of Nevada except that connected with the mining venture in which he and his associate, made attorney, had the beneficial interests mentioned above. The power of attorney was filled in upon a printed blank and was executed by the plaintiff in the Dominion of Canada, where he then was living. So far as concerned shares of stock the power of attorney authorized the attorney to demand and receive sums due the plaintiff "for or in respect of any shares, stock or interest, which I may now or hereafter hold in any Joint Stock or incorporated Company," and "to sell and absolutely dispose of . . . such shares, stocks . . . and others securities for money as are hereinbefore mentioned, . . . and generally to act in relation to my estate and effects, real and personal, as fully and effectually, in all respects, as I could do if personally present." Then followed in the handwriting of the plaintiff and before his signature these words: "This Power of Attorney to remain in force one year from this date and to cover the State of Nevada only." The trial judge found that the power of attorney was given at the request of the plaintiff's associate, made attorney, "for the purpose of enabling him to make a settlement of all their interests in Nevada" and found that under the power of attorney the transfer in question was authorized. *Held*, that these findings of the judge not only were not plainly wrong but that they were supported fully by the evidence, and that the bill should be dismissed.

Where on an appeal in a suit in equity it appeared that some of the evidence reported was incompetent, but that, if all the evidence to which objection was made should be excluded, the controlling facts would be in no way changed, it was *held* that no reversible error was shown.

In the suit in equity above described there was no allegation of and no evidence of bad faith on the part of the associate of the plaintiff to whom the power of attorney was made, and there was nothing to indicate that anybody acting in behalf of the defendants had knowledge of any facts affecting them with notice of bad faith on the part of such attorney, and it was *said* that, even if the person to whom the power of attorney was given had been false to the plaintiff and had violated his duty toward him, that would not have affected the defendants if they had no knowledge of it and acted as reasonable men in good faith in relying upon the terms written in the power of attorney.

BILL IN EQUITY, filed in the Superior Court on April 26 and amended on October 20, 1916, seeking to have the defendant Brown, as the trustee under a pooling agreement, ordered to transfer to the plaintiff certain shares of the capital stock of the

Nixon-Nevada Mining Company, as more fully described in the opinion.

The case was heard by *Jenney*, J., who made a finding of facts, including the facts that are stated in the opinion, the evidence being reported by a commissioner appointed to take the evidence under Equity Rule 35. The judge made an order that the bill be dismissed. Later by order of the judge a final decree was entered dismissing the bill with costs to the defendants. The plaintiff appealed.

*W. C. Cogswell*, (*J. H. Appleton* with him,) for the plaintiff.

*H. Williams, Jr.*, (*C. E. Fay* with him,) for the defendants.

RUGG, C. J. This is a suit in equity whereby the plaintiff seeks to have transferred to him certain shares of stock in the Nixon-Nevada Mining Company. The mining company was incorporated under the laws of Maine, had a place of business in Boston and was organized for the purchase of mines and interests therein in the State of Nevada and for the operation of such mines. The plaintiff and one Nelson entered into a contract in 1913 whereby they agreed to transfer to the company mining properties in the State of Nevada and the company agreed to pay to them specified shares of vendors' stock and upon named conditions further shares of treasury stock, all shares to be held by the defendant Brown as trustee under a pooling agreement for a term, which with its extensions had not expired when this suit was brought. This contract for purchase and payment was carried out on both sides.

It is contended that the plaintiff is precluded from maintaining this suit because all his interest in this stock has been transferred by Nelson by virtue of a power of attorney given him by the plaintiff. The transfer made by Nelson confessedly includes the plaintiff's interest in these shares, but it is urged that there was no authority conferred by the power of attorney to make such transfer. The crucial question to be decided is the true construction of this power of attorney.

It is permissible to examine all the circumstances under which a written instrument was executed, so far as actually or presumably present to the minds of the parties, for the purpose of enabling the court to understand their situation and to apply their words to the right subject matter in the light of all the attendant condi-

tions. Parol testimony is admissible in this connection, not to
control the written words but to apply them to their proper
objects. *Willett* v. *Smith*, 214 Mass. 494, 497.

The circumstances in the case at bar were that the plaintiff and
Nelson were joint owners of mining rights in Nevada. After the
transfer of several of these to the Nixon-Nevada Mining Company,
Nelson was employed by the company to take charge of the mines
thus transferred, and continued in this work until about March
or April, 1915. Active operations at the mines were carried on
until about January 1, 1915, when they were greatly reduced
although not wholly suspended. The plaintiff left Nevada early
in 1914, going to Calgary, Alberta, and later to the Hudson Bay
region. There was some correspondence between him and Nelson
referring to the mine operated by the Nixon-Nevada Mining
Company and to controversies between Nelson and it, and to the
possibility that the mine might revert to Nelson and the plaintiff.

The company was in financial difficulties. Nelson in his own
name had commenced an action against it. The plaintiff knew
of this fact. Nelson was in conference with the attorney of the
company about the settlement of his claims and those of the
plaintiff. It was under these circumstances that in May, 1915,
at Calgary the plaintiff executed the power of attorney upon a
printed blank, which he there procured and filled out. It was in
broad terms. Without enumerating other subjects covered, so
far as concerns stocks, the power of attorney authorized Nelson
to demand and receive sums due the plaintiff "for or in respect
of any shares, Stock or interest, which I may now or hereafter
hold in any Joint Stock or incorporated Company," and "to sell
and absolutely dispose of . . . such shares, stocks . . . and
other securities for money as are hereinbefore mentioned, . . .
and generally to act in relation to my estate and effects, real and
personal, as fully and effectually, in all respects, as I could do if
personally present." Then followed in the handwriting of the
plaintiff these words: "This Power of Attorney to remain in
force one year from this date and to cover the State of Nevada
only."

It is plain that, if the concluding sentence were omitted, the
power was comprehensive enough to authorize Nelson to transfer
the interests of the plaintiff in the mining company. Even though

no shares of stock stood in his name, the plaintiff was the beneficial owner of stock standing in the name of the defendant Brown, to hold as trustee solely for the purpose of executing the pooling arrangement. This beneficial right of the plaintiff in the shares thus held was included within the descriptive words "interest . . . in any . . . incorporated Company" used in the power of attorney.

The circumstances under which this power of attorney was executed, and the relations of the parties to property in Nevada, negative the contention that it did not extend to the property in which Nelson and the plaintiff were jointly interested. Cases like *Attwood* v. *Munnings,* 7 B. & C. 278, have no pertinency to these facts. Plainly an agent may be empowered to sell property of his principal in connection with his own property. *Cutter* v. *Demmon,* 111 Mass. 474.

We are of opinion that the extensive authority of this power of attorney is not so cut down by the concluding phrase, "to cover the State of Nevada only," as to prevent Nelson from making a valid transfer of the plaintiff's interest in the stock. Manifestly these words of limitation refer to the subject matter respecting which and not to the place where the power of attorney is to be exercised. Read in the light of the relations of each of these parties to the other and to property rights centering in Nevada, the words "to cover the State of Nevada only" mean that the power of attorney is to be exercised as to property either physically located within that State or deriving its value from ownership of property physically located within that State. Of course in most aspects the property of stockholders in corporations in their respective shares of stock is separate and distinct from the property of the corporation. *Bellows Falls Power Co.* v. *Commonwealth,* 222 Mass. 51, 57–59. Commonly also the *situs* of shares of stock is at the residence of the owner or at the domicil of the corporation. *Kennedy* v. *Hodges,* 215 Mass. 112. *Baker* v. *Baker, Eccles & Co.* 242 U. S. 394, 401. Yet in a remote sense a certificate of stock is "an interest in the property of the corporation which might be in other States than either the corporation or the certificate of stock." *Hatch* v. *Reardon,* 204 U. S. 152, 161.

The words of limitation in the power of attorney at bar were used by mining operators, who had been engaged as joint owners

of a mine and mining claims. They had ceased to be conjointly active in this enterprise and one had gone to a foreign country. He was familiar through letters from his associate with the conduct and standing of the corporation which was working the mine. He was giving to his co-adventurer a power of attorney, which, although comprising in terms a wide grant of authority, for all practical purposes was confined to matters connected with their common rights in mining interests. It does not appear that there was any other subject matter upon which it could operate.

There was no property of the plaintiff in Nevada except that connected with the mining venture in which he and Nelson were interested. When under these circumstances the broad power, including stocks as well as other real and personal property, is "to cover the State of Nevada only," a fair interpretation of its terms is that it is to be effective respecting all properties which derive their value from real or personal estate located within the State of Nevada, whether the title be in immediate proprietorship or in the indirect medium of ownership of stock in a corporation which holds the title, or as the beneficiary of such stocks held in trust for business reasons and purposes.

A careful examination of the entire record and all the evidence discloses no reason for reversing the findings of facts made by the judge. So far as material, they not only are not plainly wrong but appear to be fully supported by the evidence. They stand as true. *Lindsey* v. *Bird*, 193 Mass. 200. There is nothing in the finding which amounts to a variation by parol of the written power of attorney.

The finding, that the power of attorney "was given at the request of Nelson, and for the purpose of enabling him to make a settlement of all their interests in Nevada," was not contrary to the terms of the power of attorney. In part, at least, it relates to the circumstances attending its execution. Moreover, some of the defendants, not being parties to that instrument or the privies of the parties, would not be bound by its terms. See, in this connection, *Wilson* v. *Mulloney*, 185 Mass. 430, *Hawes* v. *Weeden*, 180 Mass. 106, and *Johnson* v. *Von Scholley*, 218 Mass. 454. Even if this finding of fact be disregarded either as irrelevant or not supported by competent evidence, the result is not affected. Doubtless some of the testimony of Springmeyer was incompetent.

But no reversible error is shown for the reason that, if the portions to which objection was made should be excluded, the controlling facts would be in no wise changed. Treating all such testimony as out of the case, we perceive no ground for modifying the decision.

The plaintiff's case does not proceed on the footing of fraud on the part of the defendants. There is no such allegation in the bill. Moreover, there is nothing in the evidence which requires or warrants a finding that Nelson was false to the interests of the plaintiff to the knowledge of the defendants. There is an express finding that Springmeyer, who made the adjustment in behalf of the mining company and of Jefferson, "acted in good faith." This finding is supported by evidence and there appears to be no ground for reversing it. There is nothing to indicate that either· he or any of the defendants had knowledge of facts which affect them with notice of any bad faith on the part of Nelson. If Nelson was false to the plaintiff and did not as between the two proceed' in accordance with his duty, that is nothing for which the defendants are responsible provided they acted as reasonable men in good faith in reliance upon the terms written in the power of attorney.

*Decree affirmed with costs.*