## Daniel J. Twohig *vs.* Julia M. Daly.

Plymouth.   December 5, 1923. — February 27, 1924.

Present: Rugg, C.J., Braley, Crosby, Pierce, & Carroll, JJ.

*Contract,* Validity, For sale of land, Under seal.   *Broker.   Agency,* Fidelity of agent.   *Evidence,* Presumptions and burden of proof.

At the trial of an action for breach by the defendant, a woman, of an agreement under seal to sell certain real estate to the plaintiff, the defendant contended that she had been defrauded and testified that the contract was made with the plaintiff through a broker who did not procure for the defendant the highest price possible and who, in collusion with others, resold the land at an advance in price.   While there was evidence of fraud of the broker and that the commission for procuring the sale was paid by the plaintiff in accordance with an agreement between the broker and the defendant, there was no evidence tending to show that the plaintiff had any knowledge or information that should have put him upon inquiry as to any fraud practised upon the defendant by the broker.   At the close of the evidence, the trial judge refused to rule, at the request of the plaintiff, that " On all the evidence the jury are not warranted in finding there was any fraud in this case practised on the defendant such as would invalidate the contract." The jury found for the defendant.   The plaintiff alleged exceptions. *Held,* that

(1) The burden was on the defendant to prove her contention that the plaintiff had acted dishonestly;

(2) The payment of the commission by the plaintiff being in accordance with the understanding between the defendant and the broker, the broker was not made thereby the agent of the plaintiff and the plaintiff was not bound by his acts of fraud;

(3) The contract being under seal, it could not be set aside by reason of the fraud of the broker, who was not an agent of the plaintiff and was not shown to have acted in collusion with him;

(4) The ruling requested should have been granted, and the plaintiff's exceptions were sustained.

Contract for damages alleged to have resulted from a breach by the defendant of an agreement to sell real estate to the plaintiff.   Writ dated June 14, 1920.

In the Superior Court, the action was tried before *Dubuque,* J.   Material evidence and requests by the plaintiff for rulings are described in the opinion.   The jury found for the defendant.   The plaintiff alleged exceptions.

*O. V. Fortier,* (*H. F. Parker* with him,) for the plaintiff.

*W. G. Rowe,* (*W. J. Callahan* with him,) for the defendant.

BRALEY, J.   The defendant, being the owner of a lot of land on which were two summer dwellings, entered into a contract with the plaintiff on March 25, 1920, whereby she agreed to sell the property to him for $5,000, the premises to be conveyed " on or before May 31, 1920, by a good and sufficient warranty deed." A partial payment of $100 was made, which has never been returned, and, the defendant having refused performance as she admitted at the trial, the present action is brought to recover damages for the breach.

The answer is a general denial, with averments, that she was induced to execute the contract through the false and fraudulent representations of the plaintiff or his agent, that the contract is against public policy, because it contains a clause whereby the plaintiff was allowed to secure a first mortgage on the premises " in the amount and place he may desire and the defendant to take a second mortgage of $500 dated day of sale." It is further averred, that she listed the property with Neafsey and Dwyer, real estate brokers, for sale or to procure a purchaser, who promised to obtain the highest price possible, but instead, " they made negotiations for the sale of said properties in the sum total of $7,200 besides reserving a lot of land for their own use and then induced by false and fraudulent representations said defendant to sign said contract of sale with said plaintiff in the sum of $5,000; . . . that the plaintiff is a straw, fraudulent and intermediate person, perpetrating and practising fraud on your said defendant with the aid and assistance of said Neafsey and Dwyer. . . . And the defendant further answering says that the said plaintiff is not the real purchaser of the said properties but that Neafsey and Dwyer or one of them, having been the real estate brokers in said transaction had made or arranged a *bona fide* sale of the said properties to person or persons other than said Twohig for the sum total of $7,200, besides retaining for their own or his own use a small portion of said premises, and that the person of said plaintiff is being used as an intermediary party

in order to carry out the fraud that is being perpetrated or practised on said defendant, for the defendant says that she is being defrauded by said plaintiff in said contract." The answer then charges that the plaintiff, when the contract was made, knew of the fraud to which the defendant is alleged to have been subjected, and of its harmful results in inducing her to agree to part with the property so that it could be sold at an enhanced price.

The plaintiff at the close of the evidence requested the trial judge to rule, that " On all the evidence the jury are not warranted in finding there was any fraud in the case practised on the defendant such as would invalidate the contract." The ruling was refused, and, the jury having returned a verdict for the defendant, the case is here on the plaintiff's exceptions.

The sale was negotiated by one Neafsey, a real estate broker, a member of the firm of Neafsey and Dwyer, and the contentions of the defendant are, that, while acting for her, he also was the agent of the plaintiff, and that his double employment and misstatements and concealment of material facts justified her repudiation of the agreement. The defendant, who does not appear to have been illiterate, voluntarily executed the contract, the terms of which cannot be varied by parol evidence, and the burden was on her to offer affirmative evidence to sustain her contention that the plaintiff had acted dishonestly. *Barron* v. *International Trust Co.* 184 Mass. 440, 443. *Seretto* v. *Schell,* 247 Mass. 173.

If the jury believed the defendant's evidence, Neafsey, before the agreement was executed, asked her whether she desired to sell the property. The defendant replied that she did not know " whether I did or not." A second interview followed when the defendant expressed a desire to sell, but named no price, and instructed Neafsey, that " I wanted all I could get." At the third interview Neafsey informed her that $5,000 was " all he could get," and thereupon she signed the contract. But when asked to specifically state her reasons for not giving a deed, she testified, that between the date of the agreement, and the " time of

delivering the houses . . . a number of people . . . told me of this fraudulent game that was being put up between Mr. Neafsey and Mr. Twohig and others, they were separating the property and selling each house separate, and the land, dividing the money and keeping it. So when I found that out . . . I would not sign the deed. Mr. Neafsey claimed he sold the property to Mr. Twohig, which I am very sure Mr. Twohig was only a middleman for others. In separating the property he was selling one house to one person and another to another, and keeping the lot of land for his own use." And when asked, " Is that your only reason? " the answer was, " That is the only reason." The defendant admitted, that Neafsey told her before the contract of sale was consummated, that he had a customer, one Masterson, who had made an offer of $5,000 which was all he could get for the property, and that the defendant said she would not pay him any commission. If he wanted a commission the purchaser must pay it. The evidence tended to show and it could be found that Masterson had asked Neafsey if he could not buy the property for him, and that throughout the negotiations Masterson was the principal, the plaintiff Twohig being his agent to take title.

But, even if the purchaser was to pay the commission, such payment was in accordance with the understanding between the defendant and Neafsey, and the case at bar on this question is governed by *Alvord* v. *Cook,* 174 Mass. 120, and not by *Quinn* v. *Burton,* 195 Mass. 277.

The identity of the purchaser, however, on the defendant's own evidence, as well as on all the evidence, being immaterial to her if Neafsey succeeded in getting the largest possible price, there was no fraud practised by reason of the fact that Twohig was the party with whom she contracted. *Veasey* v. *Carson,* 177 Mass. 117. *Ebert* v. *Haskell,* 217 Mass. 209.

The only remaining defence is, that Neafsey, Masterson and Twohig acted in collusion to obtain the property for $5,000, which, as Twohig and Masterson testified, was resold for an aggregate amount of $7,200, although the jury could believe the defendant, that the sale covered only the

houses, while Neafsey retained the land for himself.   But a full examination of the record discloses no evidence, that either Masterson or Twohig had any knowledge or information that should have put them on inquiry, that Neafsey had represented to her, that $5,000 was all he could get, and that, relying on this material misrepresentation as true, she had bound herself to sell for that price.

The contract, moreover, which is a sealed instrument, cannot be set aside for the fraud of Neafsey who was not the agent of the plaintiff, and who is not shown to have acted in collusion with him.   *Callahan* v. *Mercantile Trust Co.* 188 Mass. 393.   *Ginn* v. *Almy*, 212 Mass. 486, 497, 499. *Seretto* v. *Schell, supra.*

The refusal of the request was erroneous for the reasons stated.

*Exceptions sustained.*