BENILDE B. MALAGUTI *vs.* DORA ROSEN & another.

Suffolk.  November 10, 1927.— March 2, 1928.

Present: BRALEY, CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Mortgage,* Of real estate: validity, of registered land. *Evidence,* Extrinsic affecting writing, Competency. *Power of Attorney. Deed,* Construction, Validity, Power of attorney, Acknowledgment, Of registered land. *Bona Fide Purchaser. Agency,* Scope of authority, Delegation of power by agent, Power of attorney. *Husband and Wife. Land Court,* Registration, Certificate of title.

In a suit in equity, an issue was the meaning of a power of attorney given by a wife to her husband and authorizing him "to do anything of any name or nature in relation to selling, conveying, transferring, mortgaging both real and personal property of any name and nature. To enter and take possession of real and personal property held by me as mortgagee and to foreclose said mortgages. Hereby granting unto my said attorney full power and authority in my name and behalf to sign, seal, acknowledge, and deliver any and all deeds or other instruments in writing which I [*sic*] may deem necessary or proper in the premises, and otherwise to act in and concerning the premises as fully and effectually as I might do if personally present." It appeared that the wife did not care what her husband did under the power as the use of it was only pursuing the course always followed by her, namely, permitting her husband to do as he saw fit with his or her property, as she left it wholly in his hands. *Held,* that

(1) Statements, offered in explanation of the wife's purpose, of her expressed intention in executing the power were inadmissible in evidence;

(2) Evidence of any understanding between the wife and her husband, not mentioned in the power and unknown to a mortgagee in a mortgage given by the husband in the wife's name under the power of attorney, properly was excluded;

(3) In the circumstances, the giving by the husband of a note secured by a mortgage of registered real estate which had been purchased for the wife at a sale in foreclosure of a mortgage held by her was incidental to and within the scope of the authority given to the husband by the power of attorney "to do anything . . . in relation to . . . mortgaging . . .";

(4) The mere fact that the wife also had given to a lawyer a power of attorney to foreclose the mortgage on the registered land was not evidence that the husband understood that he was to have no authority over the registered land; the law does not prohibit an owner of property bestowing upon two individuals authority to act in the same matter;

(5) The belief of the husband as to the scope of the authority given by the power of attorney did not affect the rights of the mortgagee;

(6) The insertion in the power of attorney of the pronoun "I" when "he" evidently was intended was a clerical error, and the power was considered as though the latter pronoun had been used;

(7) The fact that no registered land was owned by the wife at the time the power of attorney was executed was not a controlling consideration.

The suit above described sought the setting aside of two mortgages and mortgage notes given on the same piece of real estate in the name of the wife, the plaintiff, by the husband purporting to act under the power of attorney above described. One note was for $10,000 for two months without interest. The second was for three months without interest in the sum of $17,500. On the first, the husband received only $8,500; on the second only $15,000. The husband lent the money so received to an opera company in which he was interested. The amounts of the bonuses were fixed before the mortgagees had any knowledge of the state of the title, and they had no knowledge of the use to which the borrowed money was to be applied. The mortgagees were defendants. *Held,* that

(1) It could not be ruled as a matter of law that the mortgagees were not acting in good faith or were charged with notice that the husband was acting in excess of the authority intended to be conferred;

(2) Even if the husband acted in violation of the duty he owed the wife, she could not avoid the transactions on that ground, if it did not appear that the mortgagees had knowledge of the use to which the husband was to apply the borrowed money.

It appeared, in the suit above described, that the owner's duplicate certificate, in the case of each mortgage, was recorded and was in the files of the registry of registered land titles, and that the clerk produced it at the request of an attorney who was acting for the wife and the

husband, and that this course was in conformity to the usual practice of that registry in similar cases. The plaintiff wife contended that this was not a compliance with G. L. c. 185, § 62. *Held,* that

(1) The interpretation thus placed upon the statutory provision by the officials of the registry was entitled to consideration;

(2) In the absence of evidence to the contrary, it would be presumed that the duplicate certificate was at the registry with the plaintiff's knowledge and consent;

(3) The power to mortgage registered land would authorize the agent as an incident of that power to make such use of the duplicate certificate left at the registry as might be necessary for the registration of the mortgage;

(4) A more formal presentation or production of the certificate was not required.

The power of attorney above described was recorded in the records of unregistered land, but was not recorded in the records of registered land. *Held,* that G. L. c. 209, § 3, did not make the power of attorney invalid for that reason.

It was within the authority of the husband, under the power of attorney above described, to delegate to an attorney at law the performance of a merely mechanical, clerical, or ministerial act involving no judgment or discretion.

The husband, after the execution of the first of the mortgages above described, gave the mortgagee a receipt for the money in the wife's name. Thereafter the mortgagee's attorney and the attorney acting for the husband and the wife went to the registry of deeds for the purpose of recording the mortgage. The clerk in the registry, after looking up the power of attorney and satisfying herself that the duplicate certificate of title was then in the registry and that the attorney purporting to represent the husband was such, indicated that the mortgage was not in form for registration. Consequently that attorney, relying upon information he had received from the husband, wrote on the mortgage deed, below the signatures and above the acknowledgment clause, a certificate which he signed, in effect that the wife was still alive and that the power of attorney, referring to its place of record, was still in force. At the same time and place the attorney for the mortgagee, who had taken the acknowledgment, made a change in the acknowledgment clause to comply with the requirements as stated by the clerk and also to make that clause conform in truth to the acknowledgment taken by him. The duplicate certificate was used by the attorney for the husband and the clerk to make comparisons. *Held,* that the addition below the signatures in the mortgage of a true statement concerning the power under which the mortgage was executed, and the changes in the form of the acknowledgment clauses, made in good faith before title passed, did not invalidate the mortgages nor prevent the Land Court from making a valid registration of them.

The mere fact that in the circumstances the power of attorney was not registered with the recorder or assistant recorder of the Land Court, as required by G. L. c. 185, § 110, was not notice to the defendants of any unexpressed limitation in it, and the failure of the husband to have it

registered did not prevent the defendants from contending that as to the plaintiff they were protected because they were holders for value of certificates of title as mortgagees issued by the Land Court.

BILL IN EQUITY, filed in the Superior Court on October 28, 1925, and afterwards amended, described in the opinion.

The suit was referred to a master. The mortgage and mortgage note to the defendant Rosen were for a period of two months without interest and in the sum of $10,000, of which the plaintiff's husband received $8,500 only; those to the defendant Buccola were for a period of three months without interest and in the sum of $17,500, of which the plaintiff's husband received $15,000 only. The proceeds were used by him to lend to an opera company in which he was interested. Other material facts found by the master are stated in the opinion. Exceptions by the plaintiff to the master's report were overruled, the report was confirmed, and the bill was dismissed by interlocutory and final decrees entered by order of *Morton*, J. The plaintiff appealed from both decrees.

*F. W. Mansfield*, for the plaintiff.

*W. P. Murray*, (*M. Spector* with him,) for the defendant Rosen.

*N. A. Heller*, for the defendant Buccola.

SANDERSON, J. In this bill the plaintiff seeks injunctive relief, the cancellation of certain mortgages and mortgage notes, the execution of any documents necessary to restore the records of registered land to the state in which they were before the mortgages were noted, and includes a prayer for general relief. The case was referred to a master and, exceptions to his report having been overruled, an interlocutory decree confirming the report and a final decree dismissing the bill were entered, from which the plaintiff appealed.

In August, 1922, the plaintiff owned unregistered land in Massachusetts and held a mortgage on registered land on Blackwood Street, Boston. A few days before sailing for Italy in the latter part of that month, she executed a power of attorney to her husband. Two days later he caused her to execute a power of attorney to counsel who had acted for both of them, for the purpose of enabling him to foreclose

the mortgage on that property in the plaintiff's absence. The power to counsel was in general terms; it "was recorded in Suffolk County Registry District . . . and recorded with the registry of deeds for unregistered land." Upon foreclosure under this power, in 1922, she became owner of the property and an owner's certificate of title was issued to her.

In 1925, Malaguti, purporting to act under the power to him, executed a mortgage on the property to each of the defendants, and each defendant received a mortgagee's duplicate certificate issued by the Land Court in accordance with the provisions of G. L. c. 185, § 68. In the power the plaintiff authorized her husband "to do anything of any name or nature in relation to selling, conveying, transferring, mortgaging both real and personal property of any name and nature. To enter and take possession of real and personal property held by me as mortgagee and to foreclose said mortgages. Hereby granting unto my said attorney full power and authority in my name and behalf to sign, seal, acknowledge, and deliver any and all deeds or other instruments in writing which I [*sic*] may deem necessary or proper in the premises, and otherwise to act in and concerning the premises as fully and effectually as I might do if personally present." This power was recorded in the registry of deeds for the county of Suffolk, but not with the records of registered land. Malaguti acted under this power in several matters after the plaintiff's return from Italy, but without her knowledge. The mortgage to Rosen was dated and accepted for registration in the Land Court September 15, 1925; that to Buccola was dated and registered September 26, 1925. The plaintiff first learned of these mortgages on October 13, 1925, and revoked the power on the same date.

The contention of the plaintiff — that the defendants were nominal parties only and that the alleged mortgages were taken and the money advanced by one individual — was made untenable by the findings that they were separate and distinct persons with no collusion between them in these transactions; and that they held their respective mortgages and notes as purchasers for value in good faith, without notice except such as they may be charged with as matter

of law.    The master also found that, in so far as it could be found as a fact, each defendant holds his note secured by mortgage as a holder in due course and that each mortgagee's title is free from all encumbrances except those which appear on his certificate and those mentioned in G. L. c. 185, § 46.

The first question presented is whether the power of attorney includes within its scope the borrowing of money and the execution of notes therefor in the plaintiff's name, secured by mortgages of her registered land.    There is no legal objection to a husband acting as agent for his wife in conveying or mortgaging her real estate.    In interpreting the meaning of a written instrument, "Our first duty is to put ourselves in the place of the parties to the instrument and then to read it giving to its words their plain and ordinary meaning in the light of the circumstances and in view of the subject matter, the acts of the parties and their relations to each other." *Aldrich* v. *Bay State Construction Co.* 186 Mass. 489, 491.    "Parol testimony is admissible in this connection, not to control the written words but to apply them to their proper objects." *Warner* v. *Brown,* 231 Mass. 333, 336. *Wellwood* v. *Havrah Mishna Anshi Sphard Cemetery Corp.* 254 Mass. 350, 354, 355.    But this rule does not make admissible statements offered in explanation of the plaintiff's purpose or her expressed intention in executing the power; *New York Central Railroad* v. *Swenson,* 224 Mass. 88, 92, *Barbrick* v. *Huddell,* 245 Mass. 428, 438; and the plaintiff's exceptions to the exclusion of evidence of that nature were rightly overruled.    Likewise, evidence of any understanding between the plaintiff and her husband, not mentioned in the power and unknown to the defendants, was properly excluded.

The master found that after her marriage the plaintiff gave little attention to affairs outside her home, leaving all matters pertaining to business to her husband who had his property put in the name of his wife and other members of his family for the protection of himself and them; that she did not care what her husband did with money sent to him from Italy representing the proceeds of the sale of property owned by her in that country; that Malaguti caused

the power of attorney to be prepared for the purpose of enabling him to handle her affairs and to do as he liked with the properties standing in her name; and that the plaintiff did not care what her husband did under the power as the use of it was only pursuing the course always followed by her, namely, of permitting her husband to do as he saw fit with his or her property, as she left it wholly in his hands. The terms of the power do not suggest that it was intended to be limited in its scope. See *Cauman* v. *American Credit Indemnity Co. of New York*, 229 Mass. 278.

Authority to borrow money includes authority to execute a promissory note in the principal's name for a loan, *Security Savings Bank* v. *Smith*, 38 Ore. 72, or to give the lender the ordinary security therefor, including bonds, notes or acceptances, and collaterals. *Hatch* v. *Coddington*, 95 U. S. 48. Under a vote of the directors of a manufacturing corporation giving the president full control of the business, he has authority to borrow money for the corporation and to give its note for the loan. *Castle* v. *Belfast Foundry Co.* 72 Maine, 167. See *Sprague* v. *Gillett*, 9 Met. 91. The authority to mortgage, expressly given, contemplated the creation of a debt or other obligation to be secured by mortgage. In our opinion upon the facts found in the case at bar the giving of a note for such obligation was incidental to and within the scope of Malaguti's authority under the power. The rule of construction illustrated by *Wood* v. *Goodridge*, 6 Cush. 117, *Hoyt* v. *Jaques*, 129 Mass. 286, *Williams* v. *Dugan*, 217 Mass. 526, to the effect that a power of attorney must be strictly interpreted, does not go to the extent of destroying the purpose of the power. Having reached the conclusion that the power of attorney authorized execution of notes to be secured by mortgages, we need not consider whether apart from the power Malaguti had authority to execute notes in his wife's name.

The plaintiff contends that the giving of the power of attorney to counsel, recorded in the registration division of the Land Court, is evidence that Malaguti understood he was to have no authority over the registered land. The law does not prohibit an owner of property bestowing upon two

individuals authority to act in the same matter.   One reason
for the second power of attorney may have been that the
mortgage of land on Blackwood Street to be foreclosed was
given by the Columbia Investment Company which was
controlled by Malaguti.   The belief of Malaguti as to the
scope of the power could not affect the defendants' rights.
They knew that the first power was recorded with the
general records and had notice that the second was recorded
in the registration division; but they had a right to rely on
the fact that the first, which was still in force, in its terms
authorized the conveyances which Malaguti made.   The
words used in the power to Malaguti were: "Hereby grant-
ing unto my said attorney full power and authority in my
name and behalf to sign, seal, acknowledge, and deliver any
and all deeds . . . which I may deem necessary . . . ."
This apparent reservation of control of the instruments to be
executed is inconsistent with the import of the preceding
words and with the purpose for which the power was given
as disclosed by the evidence, from which it appears that the
plaintiff did not intend to retain power of supervision.   The
insertion of the pronoun "I" when "he" evidently was
intended is treated as a clerical error, and the power is
considered as though the latter pronoun had been used.

The fact that no registered land was owned by the plaintiff
at the time the power of attorney was executed is not a
controlling consideration.   There is nothing in the nature
of the power which prevents the inclusion within its scope of
property later acquired.

The master found that the bonuses given included interest,
and were agreed to because the mortgages were subject to
one prior mortgage in one case and to two in the other, and
also because of Malaguti's need of money.   The amounts
of the bonuses were fixed before the mortgagees had any
knowledge of the state of the title.   We cannot say that the
size of the bonuses required the master to find that the
defendants were not acting in good faith or were charged
with notice that Malaguti was acting in excess of the author-
ity intended to be conferred.   The money obtained by

Malaguti on both mortgages was loaned to a corporation in which he was interested.

In view of the master's finding that the defendants had no knowledge of the use to which the borrowed money was to be applied, the plaintiff's contention to the contrary cannot be maintained. In the absence of such knowledge, even if Malaguti acted in violation of a duty he owed the plaintiff, she cannot, upon that ground, avoid the transactions in question, *Twohig* v. *Daly*, 248 Mass. 49, 52, 53, and the principle, that "ostensible powers" of an agent are "his real powers" as to persons dealing with him without knowledge of limitations upon his apparent authority, controls. *Brooks* v. *Shaw*, 197 Mass. 376, 380. *Danforth* v. *Chandler*, 237 Mass. 518. The findings of the master distinguish the case at bar from *Isenbeck* v. *Burroughs*, 217 Mass. 537, 542, and *Record* v. *Littlefield*, 218 Mass. 483, 486.

The plaintiff contends that the provisions of law relating to the production of the duplicate certificate were not complied with. G. L. c. 185, § 48, provides that the duplicate certificate may be delivered to the owner or his duly authorized attorney; under § 62, the owner's duplicate certificate must be presented before any new certificate of title shall be entered or any memorandum on a certificate made, and the production of that certificate is made conclusive authority from the registered owner to the recorder to enter a new certificate or to make a memorandum of registration. In the case at bar, however, the duplicate certificate in each instance was in the files at the registry and the clerk produced it at the request of Saxe, the attorney who, as the master finds, was acting for the plaintiff and her husband. A more formal presentation or production of the certificate was not required. The course taken in connection with these mortgages was found to be in conformity to the usual practice of the Suffolk County registry in similar cases. The interpretation thus placed upon these provisions by the officials of the registry is entitled to consideration. *United States* v. *Hammers*, 221 U. S. 220. *United States* v. *Minnesota*, 270 U. S. 181. In the absence of evidence to the contrary it would be presumed that the duplicate certificate was at the

registry with the plaintiff's knowledge and consent. The power to mortgage registered land would authorize the agent as an incident of that power to make such use of the duplicate certificate left at the registry as might be necessary for the registration of the mortgage.

G. L. c. 209, § 3, provides that no conveyance of real estate between husband and wife shall have any effect until the deed is duly acknowledged and recorded. The purpose of this provision was to prevent the deception and defrauding of creditors by making gifts of real property ineffective unless evidenced by recorded deed. *Atlantic National Bank* v. *Tavener,* 130 Mass. 407, 410. *Marshall* v. *Jaquith,* 134 Mass. 138, 140. This statute does not apply to an instrument giving a husband the power to mortgage his wife's property for a consideration. G. L. c. 183, § 32. See *Valentine* v. *Piper,* 22 Pick. 85, 91.

The plaintiff contends that Malaguti, without right, delegated part of his powers and duties to Saxe. It is well settled that without express authority an agent cannot delegate to a subagent the performance of acts involving elements of judgment, discretion or personal skill, *Smith* v. *Abbott,* 221 Mass. 326, 330; but the performance of a merely mechanical, clerical, or ministerial act involving no judgment or discretion may be delegated. *Gibson* v. *National Park Bank of New York,* 98 N. Y. 87, 96. In *Tyler* v. *Court of Registration,* 175 Mass. 71, 80, the court, referring to the duties of the recorder and assistant recorder, said: "The ordinary business of registration is very nearly ministerial." Malaguti's appointment of Saxe to take the steps necessary to obtain the certificates of registration was not an improper delegation of authority and Saxe, in performing acts which properly might be so delegated, could be found to be representing the owner.

The mortgage to Rosen was executed by Malaguti, holding himself out as acting for his wife under the foregoing power of attorney without any limitation. He also, purporting to act in her behalf, gave Rosen a receipt for the money. Thereafter, Spector, Rosen's attorney, and Saxe went to the registry of deeds for the purpose of recording the mortgage. The

clerk in the registry, after looking up the power of attorney and satisfying herself that the duplicate certificate of title was then in the registry and that Saxe was attorney for Charles D. Malaguti, indicated that the mortgage was not in form for registration. As a result Saxe, relying upon information he had received from Malaguti, wrote on the mortgage deed, below the signatures and above the acknowledgment clause, the following: "I certify that Benilde B. Malaguti is still alive and power of attorney recorded Suffolk Registry Book 4397, Page 84, is still in force. Abraham Saxe." At the same time and place Spector, who had taken the acknowledgment, made a change in the acknowledgment clause to comply with the requirements as stated by the clerk and also to make that clause conform in truth to the acknowledgment taken by him. The duplicate certificate was used by Saxe and the clerk to make comparisons.

Eleven days after the Rosen transaction, the mortgage on the same property to the defendant Buccola was executed by Malaguti and taken to the recording office for registration. There certain changes were made in the note and it was returned to Malaguti, who then added his signature as an individual. At the recording office steps preceding the registration were taken similar in their legal effect to those already related in the earlier case and like changes were made by the official who had taken the acknowledgment making it a true record of the transaction. A certificate in regard to the power of attorney similar to that above described had been incorporated in the mortgage before its execution. It seems that there is no statutory requirement that such a certificate shall accompany a conveyance made by power of attorney. The changes in both mortgages were made without the knowledge of Malaguti.

The addition below the signatures in the Rosen mortgage of a true statement concerning the power under which the mortgage was executed, and the changes in the form of the acknowledgment clauses, made in good faith before title passed, did not invalidate the mortgages or prevent the Land Court from making a valid registration of them. In

*Elliott* v. *Peirsol*, 1 Pet. 328, 341, the court said, in referring to the authority of a clerk to alter his certificate of acknowledgment of a deed, "Until his certificate of the acknowledgment . . . was recorded, it was, in its nature, but an act *in pais*, and alterable at the pleasure of the officer." But it was held that this authority did not continue after the deed had been recorded. In the case at bar the instruments had not finally passed from the custody of the officer who had taken the acknowledgments when the changes therein were made.

A court has power to amend its records to make them conform to the truth, *Bent* v. *Stone*, 184 Mass. 92, 95; and the amended record is evidence of the truth of what it contains. This cannot be contradicted by testimony of the magistrate. The official form of acknowledgment was that which the mortgages bore when filed and registered, and in that form they were admissible in evidence. Cases like *Macurda* v. *Fuller*, 225 Mass. 341, 344, which relate to changes in a substantial part of the deed required to be under seal, are distinguishable in their facts from the case at bar. When the loans were made by the defendants they had no information of any limitation of the expressed power unless that appeared from the fact that the power was not recorded with the records of registered land.

G. L. c. 185, § 110, provides that " Any person may . . . convey or otherwise deal with registered land, but the letters of attorney shall be acknowledged and filed with the recorder or the assistant recorder of the proper registry district and registered . . . ." It seems clear that the purpose of the statute was to make the filing and registering of the power of attorney to convey registered land mandatory. *Milton* v. *Auditor of the Commonwealth*, 244 Mass. 93, 95. *Attleboro Trust Co.* v. *Commissioner of Corporations & Taxation*, 257 Mass. 43, 50, 51. The fact that the power was not registered was not notice to the defendants of any unexpressed limitation in it and the failure of Malaguti to have it registered does not prevent the defendants from contending that as to the plaintiff they are protected, because they are holders for value of certificates of title as mortgagees issued

by the Land Court.   Upon delivery of the mortgages they operated as contracts between the parties and as evidence of authority to the recorder or assistant recorder to make registration.   G. L. c. 185, § 57.   They gave the defendants, as against the plaintiff, an equitable interest in the land and an equitable right to registration.   *Federal National Bank of Boston* v. *Gaston,* 256 Mass. 471, 477.   In these circumstances the plaintiff's rights could not be held to be prejudiced by the registration of the mortgages without the registration of the power of attorney.   The plaintiff has shown no right which she is entitled to assert in equity against the defendants as holders in good faith of mortgages for which they paid value.   *Corey* v. *Tuttle,* 249 Mass. 135, 138. G. L. c. 231, §§ 132, 144.   This in itself would be sufficient ground for refusing at her instance a decree that the mortgages be expunged and for the other relief sought.   The statute does not in terms make the validity of a certificate of registration dependent upon the recording of the power of attorney.   A reference in a mortgage to a power of attorney is not a compliance with the statutory requirement that the power shall be registered; but both mortgages, when registered, referred specifically to the power of attorney by virtue of which they were executed, giving the book and page in the registry of deeds where the record could be found.   The essential provision that the owner's duplicate certificate of title should be presented when mortgages on his land are presented for registration, was complied with, G. L. c. 185, § 62, and the mortgages were noted thereon.   This certificate is to be received as evidence in all courts of the Commonwealth and is conclusive as to all matters contained therein.   G. L. c. 185, § 54.

Registration is the act which passes title and is the act of the court.   *Tyler* v. *Court of Registration, supra.*   G. L. c. 185, § 57.   "Proceedings in the Land Court are judicial in their nature."   *Hollingsworth & Vose Co.* v. *Recorder of the Land Court,* 262 Mass. 45.   The purpose of registration law is to bind the land and to quiet title to it.   Registration is conclusive upon every one, with a few exceptions not material to the issues in this case, and the rights of innocent

purchasers for value are given special protection. G. L. c. 185, § 45. Persons dealing with the land in the future may rely on the files at the registry and the interests of no one require changes in the records. G. L. c. 185, §§ 58, 114.

The case has been considered on its merits, and because of the conclusion reached we have not undertaken to decide whether a court of equity has power to act in the premises. The interlocutory decree overruling the exceptions to and confirming the master's report, and the final decree dismissing the bill, are affirmed with costs.

*Ordered accordingly.*